IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EMILIO M. LLANES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 4:06cv3155 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| NEBRASKA STATE PATROL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following pending motions: (1) filing no. 13, the Motion to Dismiss filed by the State of Nebraska ("State"), the Nebraska State Patrol ("NSP"), and NSP troopers Tuma and Barton in their official capacity; (2) filing no. 15, the defendants' Motion to Stay; (3) filing no. 19, the Motion to Withdraw filed by one of the defendants' attorneys; and (4) filing no. 20, the Motion for Appointment of Counsel filed by the plaintiffs, Emilio M. Llanes and Frances M. Llanes.  In their complaint, as supplemented (filing nos. 1 and 6), the plaintiffs, both of Mexican descent, assert federal civil rights claims pursuant to 42 U.S.C. § 1983, alleging wrongful arrest and detention, excessive force and discrimination in connection with a traffic stop by NSP trooper Barton on July 4, 2004. The plaintiffs seek monetary and declaratory relief as to all defendants and an injunction against racial profiling by the NSP.  They also allege tort claims arising under state law.

**Civil Rights Claims Against State, NSP & Official-Capacity Defendants**

The State, the NSP and troopers Tuma and Barton, in an official capacity, assert sovereign immunity as grounds for dismissal of the plaintiff's claims for damages against them. The Eleventh Amendment to the U.S. Constitution bars claims for monetary relief by private parties against a state, a state agency or an employee of a state in his or her

1

official capacity. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."). Thus, all claims for monetary relief of any kind against the State of Nebraska, the NSP[1] and the NSP officers in their official capacity[2] must be dismissed.

Furthermore, "a State is not a 'person' as that term is used in [42 U.S.C.] § 1983, and is not suable under the statute, regardless of the forum where the suit is maintained." Hilton v. South Carolina Public Railways Com'n, 502 U.S. 197, 199-201 (1991), *citing* Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Thus, 42 U.S.C. § 1983 does not create a cause of action against the State of Nebraska, its agencies and instrumentalities, or its employees in their official capacity for monetary relief.

As for injunctive and declaratory relief, the doctrine of Ex Parte Young, 209 U.S. 123 (1908), holds that the Eleventh Amendment does not bar suits for prospective injunctive relief against state employees in an official capacity, when appropriate. However, while a suit to enjoin state employees in their official capacity may proceed if the complaint

---

[1] The Nebraska State Patrol ("NSP") is an agency of the State of Nebraska and shares the State's sovereign immunity under the Eleventh Amendment. See, e.g., Nebraska Methodist Health System, Inc. v. Department of Health, 543 N.W.2d 466, 469 (Neb. 1996): "Generally speaking, a suit against a state agency is a suit against the State itself." Accord County of Lancaster v. State, Dept. of Public Institutions, 529 N.W.2d 791, 794 (Neb. 1995): "For the purposes of applying the doctrine of sovereign immunity, a suit against an agency of the state is the same as a suit against the state."

[2] The Eleventh Amendment prevents the plaintiff from recovering damages pursuant to 42 U.S.C. § 1983 from state employees in their official capacity because a suit against a public employee in his or her official capacity is considered a suit against the public employer. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Therefore, the plaintiff's claim against Tuma and Barton, in their official capacity, is in reality a claim against the governmental entity that employs those defendants, i.e., the State of Nebraska.

alleges an ongoing violation of federal law and seeks relief properly characterized as prospective, a declaratory judgment establishing **past liability** of the state is nevertheless forbidden by the Eleventh Amendment. <u>Verizon Maryland, Inc. v. Public Service Com'n of Maryland</u>, 535 U.S. 635, 646 (2002).

### Claims Under State Law

As for the plaintiffs' claims arising under state law, "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." <u>Pennhurst State School & Hosp. v. Halderman</u>, 465 U.S. 89, 99 (1984) (emphasis in original). See also <u>Becker v. University of Nebraska</u>, 191 F.3d 904, 908 (8th Cir. 1999): "This court has previously held that the State of Nebraska has not consented to federal court jurisdiction." Accord <u>Hess v. Port Authority Trans-Hudson Corp.</u>, 513 U.S. 30, 39-40 (1994): "The Eleventh Amendment largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." Accord <u>Trevelen v. University of Minnesota</u>, 73 F.3d 816, 818 (8th Cir. 1996): "The Supreme Court has interpreted the Eleventh Amendment to bar actions in federal court against a state by its citizens." The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court. <u>Board of Trustees of Univ. of Alabama v. Garrett,</u> 531 U.S. 356, 363 (2001).

The Neb. Const. art. V, § 22, provides that "[t]he state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." "This constitutional provision, however, is not self-executing and requires legislative action to waive the State's sovereign immunity." <u>King v. State</u>, 614 N.W.2d 341, 346 (Neb. 2000). For example, the Nebraska Legislature has waived sovereign immunity

3

for certain kinds of tort actions against the state and its agencies. See the Nebraska State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 *et seq.*, the Nebraska State Tort Claims Act. However, the waiver of sovereign immunity under the State Tort Claims Act does not extend to actions maintained in federal court. See Neb. Rev. Stat. § 81-8,214: "Suits shall be brought in the district court of the county in which the act or omission complained of occurred or, if the act or omission occurred outside the boundaries of the State of Nebraska, in the district court for Lancaster County." Thus, § 81-8,214 is a limited waiver of sovereign immunity which permits an action against the state or a state agency **exclusively** in state district court.

### Civil Rights Claims Against Individual-Capacity Defendants

To establish a violation of the Fourth Amendment in a § 1983 action, the plaintiffs must demonstrate that a seizure occurred, and that the seizure was unreasonable. A Fourth Amendment "seizure" occurs when a governmental actor intentionally restrains the liberty of an individual through physical force or show of authority. McCoy v. City of Monticello, 342 F.3d 842, 846-47 (8th Cir. 2003). "[A] seizure, standing alone, is not sufficient for section 1983 liability. The seizure must be unreasonable." Id. at 847.

A traffic violation, however minor, creates probable cause to stop the driver of a vehicle. United States v. Fuse, 391 F.3d 924, 927 (8th Cir. 2004). In a Fourth Amendment context, an officer's state of mind or intent is irrelevant if the circumstances, viewed objectively, justify the officer's action. Devenpeck v. Alford, 125 S. Ct. 588, 594 (2004) (warrantless arrest is lawful under the Fourth Amendment even if the offense for which probable existed is not "closely related" to the offense stated by the arresting officer at the time of arrest). If an officer has probable cause to stop a violator, the stop is objectively

reasonable, and the violator's claim of pretext or ulterior motive on the officer's part is irrelevant for Fourth Amendment purposes. Whren v. United States, 517 U.S. 806, 810, 812-13 (1996); Gaddis ex rel. Gaddis v. Redford Township, 364 F.3d 763, 771 (6th Cir. 2004); United States v. Bell, 86 F.3d 820,822 (8th Cir.), cert. denied, 117 S. Ct. 372 (1996). Thus, allegations of racial animus must be disregarded in the context of an otherwise objectively valid traffic stop.

In addition to sovereign immunity, the NSP troopers seek dismissal of the complaint on two other bases. The plaintiffs sued Tuma and Barton in both their individual and official capacities in ¶¶ 11 and 12 of the complaint. In filing no. 14, Tuma and Barton contend that they have been served with process only in an official capacity. However, that assertion appears incorrect.

Neb. Rev. Stat. § 25-510.02(1) states in pertinent part: "The State of Nebraska, any state agency ... and any employee of the state ... sued in an official capacity may be served by leaving the summons at the office of the Attorney General ... or by certified mail service addressed to the office of the Attorney General."  Filing no. 9 indicates personal service by the U.S. Marshal on Trooper Barton at an address in Grand Island, Nebraska, which is not that of the Nebraska Attorney General. Filing no. 11 shows personal service on Colonel Tuma at an address in Lincoln, Nebraska different from that of the Nebraska Attorney General.[3] Thus, the record indicates individual-capacity service on defendants-Tuma and Barton.

Colonel Tuma also alleges that the plaintiffs fail to state a cause of action against

---

[3]Although filing no. 10 erroneously reports "service returned 'Executed' upon defendant Tom Nesbitt," the summons actually reflects unexecuted service as a result of the U.S. Marshal's inability to serve Colonel Nesbitt, who had retired from the State Patrol.

5

him in his individual capacity, and that any individual-capacity claims against him should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  While a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief tests only the legal sufficiency of the plaintiff's complaint assuming that the factual allegations in the complaint are accepted as true, Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 651 (8th Cir. 1998), the complaint, as supplemented, includes no factual allegations against Colonel Tuma. The plaintiffs generally allege that Tuma is a "policy-maker" and that he was part of a conspiracy, but they allege no facts demonstrating any actual participation by Tuma in the events which caused the violation of the plaintiffs' rights.

As Colonel Tuma correctly asserts, he cannot be held liable to the plaintiffs under the federal civil rights laws on the basis of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by a subordinate employee such as Barton.  See, e.g., Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), *citing* Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989).  Accord Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997): "Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights."

Therefore, the plaintiffs' federal civil rights claims against Tuma in his individual capacity will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) (failure to state a claim on which relief may be granted).   In addition, the court has discretion under 28 U.S.C. § 1367(c)(3) to decline to exercise supplemental jurisdiction over the claims arising under state law against Colonel Tuma when the court has dismissed the claims over which this court has original jurisdiction, i.e., the federal claims.  28 U.S.C. § 1367(d) tolled the limitations period for the state law claims against Tuma while this federal case was

pending. In the event the plaintiff may wish to assert his claims arising under state law against Tuma in a state court, any such state law claims in this case will be dismissed without prejudice.

As a result of the foregoing, this case will proceed against Trooper Barton in his individual capacity. That defendant shall answer the complaint within twenty (20) days of the date of this Memorandum and Order, and the Courtroom Deputy for the undersigned judge shall send the remaining parties a Scheduling Packet.

### Request for Counsel

Unlike criminal prosecutions, the court cannot routinely appoint counsel in civil cases. "There is no constitutional or statutory right to appointed counsel in civil cases ...." Phillips v. Jasper County Jail, 437 F.3d 791, 793 (8th Cir. 2006). In Davis v. Scott, 94 F.3d 444, 447 (8th Cir. 1996), the Eighth Circuit Court of Appeals explained: "The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel, taking into account the factual and legal complexity of the case, the presence or absence of conflicting testimony, and the plaintiff's ability to investigate the facts and present his claim." (Citations omitted.) In addition, the plaintiffs have made little or no record of their own attempts to obtain counsel on a contingent fee basis. Filing no. 20, the plaintiffs' Motion for Appointment of Counsel, is denied, at least for the present.

THEREFORE, IT IS ORDERED:

1. That filing no. 13, the Motion to Dismiss filed by the State of Nebraska ("State"), the Nebraska State Patrol ("NSP"), and NSP troopers Tuma and Barton in their official capacity, is granted;

2. That the State, the NSP, and Colonel Bryan Tuma in both his individual and official capacities are dismissed from this litigation, and the Clerk of Court shall terminate

those parties as defendants on the court's CM/ECF docket;

    3.    That defendant-Barton in his individual capacity remains a defendant in this litigation, but the plaintiff's claims for damages against Barton in his official capacity are dismissed;

    4.    That filing no. 15, the defendants' Motion to Stay, is now moot and is denied;

    5.    That filing no. 19, the Motion to Withdraw filed by one of the defendants' attorneys, Michele M. Lewon, is granted, and the Clerk of Court shall remove her name from the mailing list for this case after sending her a copy of this order;

    6.    That filing no. 20, the plaintiffs' Motion for Appointment of Counsel, is denied;

    7.    That defendant-Barton shall answer the complaint within twenty (20) days after the date of this Memorandum and Order; and

    8.    That within five (5) days of the entry of this Memorandum and Order, the Courtroom Deputy for the undersigned judge shall send the plaintiffs and defendant-Barton a Scheduling Packet.

    April 2, 2007.        BY THE COURT:

                s/ *Richard G. Kopf*
                United States District Judge